PEOPLE v WRIGHT (ON REMAND)

PEOPLE v PEREZ (ON REMAND)

Docket Nos. 52325, 52326. Submitted June 27, 1980, at Detroit.— Decided September 2, 1980. Leave to appeal denied, 410 Mich 854.

Arnold Wright and Salvadore Perez were charged with conspiracy to deliver heroin and delivery of heroin and were convicted following a joint trial with another codefendant. Recorder's Court of Detroit, George W. Crockett, Jr., J., imposed sentences, and defendants filed separate appeals, which were consolidated by the Court of Appeals on its own motion. The Court of Appeals reversed and remanded for a new trial. *People v Wright*, 78 Mich App 246 (1977). The Supreme Court affirmed

REFERENCES FOR POINTS IN HEADNOTES

[1] 75 Am Jur 2d, Trial § 225.

[2, 3] 5 Am Jur 2d, Appeal and Error § 783 *et seq.*

[4-6] 68 Am Jur 2d, Searches and Seizures § 31.

Admissibility in criminal prosecution of evidence secured by mechanical or electronic eavesdropping device. 97 ALR2d 1283.

[6] 20 Am Jur 2d, Courts §§ 233, 236.

Prospective or retroactive operation of overruling decision. 10 ALR3d 1371.

[7, 9, 10] 21 Am Jur 2d, Criminal Law § 540.

[8, 9] 21 Am Jur 2d, Criminal Law §§ 565, 567.

Indigency of offender as affecting validity of imprisonment as alternative to payment of fine. 31 ALR3d 926.

[11, 13] 21 Am Jur 2d, Criminal Law § 143.

[12] 5 Am Jur 2d, Arrest § 45.

[13] 21 Am Jur 2d, Criminal Law § 443.

[14] 5 Am Jur 2d, Appeal and Error § 774.
21 Am Jur 2d, Criminal Law § 449.

[15] 75 Am Jur 2d, Trial §§ 550-552.

[16] 16 Am Jur 2d, Conspiracy § 2.

[17] 16 Am Jur 2d, Conspiracy § 42.

[18] 21 Am Jur 2d, Criminal Law § 119.

[19-21] 75 Am Jur 2d, Trial § 17.

[20, 21] 75 Am Jur 2d, Trial § 21.

Antagonistic defenses as ground for separate trials of codefendants in criminal case. 82 ALR3d 245.

[22, 23] 21 Am Jur 2d, Criminal Law § 491.5.

the Court of Appeals decision as to defendant Perez, but reinstated defendant Wright's conviction, 408 Mich 1 (1980), and remanded the case to the Court of Appeals where the appeals were again consolidated to consider claims of error raised by defendants but not previously discussed by the Court of Appeals, *viz.,* 1) whether the prosecutor's remarks in closing argument, objected to by defendants, deprived them of a fair and impartial trial, requiring reversal of their convictions, 2) whether the admission into evidence by the trial court of two tape recordings obtained without a warrant by means of participant monitoring constituted error where defendants made no objection at trial on the ground of illegal search and seizure, 3) whether the trial court erred in imposing both a fine and imprisonment as authorized by statute on defendant Wright with the proviso that he pay the fine to qualify for an early parole, 4) whether the trial court erred in failing to conduct an evidentiary hearing on the issue of the entrapment of defendant Wright, *sua sponte,* where he had previously testified and denied any participation in the alleged offense, 5) whether the trial court erred in denying defendant Perez's motion to dismiss the charge of conspiracy to deliver heroin on the basis of insufficient evidence, 6) whether the trial court erred in denying defendant Perez's motion to dismiss the charge of aiding and abetting the delivery of heroin on the basis of insufficient evidence, 7) whether the trial court erred in denying defendant Perez's pretrial motion for a separate trial, and 8) whether the trial court abused its discretion in denying defendant Perez's attempt to enter a plea of guilty to a lesser included offense during the course of the trial. *Held:*

1. The trial court's overruling of the defendants' objection to the civic duty arguments of the prosecutor constituted error, since the remarks injected issues broader than the defendants' guilt or innocence of the charges into the trial and cannot be viewed as harmless.

2. Admission of the recordings obtained without a warrant did not constitute reversible error under Michigan law at the time the recordings were made.

3. The trial court's additional requirement in its sentencing of defendant Wright that he first pay the fine imposed to qualify for an early parole violates the indeterminate sentence act whether or not he is financially able to pay the fine and, thus, constitutes error.

4. Defendant Wright failed to allege anything which would constitute a prima facie showing that he had a valid defense of

entrapment, and, thus, the trial court had no reason to conduct an evidentiary hearing on the issue of entrapment.

5. The facts on record leading up to the heroin sale reasonably imply that defendant Perez provided the heroin, thereby participating in the essential element necessary to the continuance of the conspiracy. Viewing this evidence in the light most favorable to the prosecution, it cannot be said that the trial court erred in refusing to dismiss the conspiracy count against him or abused its discretion in binding him over for trial.

6. The magistrate did not abuse his discretion, nor did the court err in refusing to dismiss the charge of aiding and abetting the delivery of heroin against defendant Perez, since his actions provided circumstantial evidence which, when viewed in the light most favorable to the prosecutor, established that the defendant committed the crime with which he was charged.

7. The trial court did not abuse its discretion in refusing to grant defendant Perez a separate trial since there was no affirmative showing of prejudice to his substantial rights.

8. The trial court did not abuse its discretion in refusing to accept the prosecutor's recommendation that the court accept defendant Perez's offer to plead guilty to a lesser included offense during trial, since it took into consideration the offense charged and the surrounding circumstances in arriving at its decision.

Reversed and remanded.

1. PROSECUTING ATTORNEYS — CIVIC DUTY ARGUMENTS — ERROR — CRIMINAL LAW.

Civic duty arguments by prosecutors to a jury inject issues broader than a particular defendant's guilt or innocence of the charges into a trial, encouraging jurors to suspend their power of judgment, and generally the refusal of a trial court to sustain a defendant's objection to such remarks constitutes reversible error.

2. CRIMINAL LAW — APPEAL — HARMLESS ERROR — REVERSIBLE ERROR.

The standard for determining whether error committed during a criminal trial is reversible on appeal or is merely harmless involves an inquiry as to whether the error is so offensive to the maintenance of a sound judicial system as to require reversal and, if not, whether it is harmless beyond a reasonable doubt.

3. CRIMINAL LAW — HARMLESS ERROR — DECISIONAL PROCESS.

Error is not harmless and a new trial is necessary where, in a criminal trial free of the error complained of, it is reasonably possible that even one member of the jury might have voted to acquit a defendant.

4. SEARCHES AND SEIZURES — CONSTITUTIONAL LAW — PARTICIPANT RECORDING — CRIMINAL LAW.

Federal law does not require a search warrant for participant recording or monitoring with respect to Fourth Amendment protection against unreasonable searches and seizures (US Const, Am IV).

5. SEARCHES AND SEIZURES — CONSTITUTIONAL LAW — PARTICIPANT MONITORING AND RECORDINGS — CRIMINAL LAW.

The Michigan constitutional provision governing searches and seizures has been interpreted to require a search warrant for participant monitoring and participant recordings (Const 1963, art 1, § 11).

6. SEARCHES AND SEIZURES — PARTICIPANT MONITORING AND RECORDINGS — PROSPECTIVE APPLICATION — CRIMINAL LAW.

The rule which requires a search warrant for participant monitoring and participant recordings is to be applied prospectively, and recordings made prior to its annunciation without a warrant are admissible.

7. CRIMINAL LAW — INDETERMINATE SENTENCES — STATUTES.

Any sentence which provides for a minimum sentence exceeding two-thirds of the maximum is improper as failing to comply with the indeterminate sentence statute (MCL 769.8; MSA 28.1080).

8. CRIMINAL LAW — REVOCATION OF PROBATION — FAILURE TO PAY FINES OR COSTS — CONSTITUTIONAL LAW.

Revocation of probation for failure to pay a fine or costs by one who is unable to pay constitutes a denial of equal protection as guaranteed by the Fourteenth Amendment.

9. CRIMINAL LAW — INDETERMINATE SENTENCE STATUTE — INABILITY TO PAY FINES OR COSTS — CONSTITUTIONAL LAW.

Preclusion of an indigent defendant from serving anything less than the maximum sentence imposed upon his conviction of a crime due to his inability to pay fines and costs imposed would thwart the legislative intent embodied in the indeterminate sentence statute and would constitute an invidious discrimination on the basis of economic status (MCL 769.8; MSA 28.1080).

10. CRIMINAL LAW — INDETERMINATE SENTENCE STATUTE — ABILITY
TO PAY FINES AND COSTS — PAROLE BOARD.

A trial court would be in violation of the provisions of the
indeterminate sentence statute if the minimum sentence were
made conditional on payment of a fine, whether or not a
defendant were financially able to pay the fine, since the trial
court cannot deprive the parole board of its legislatively man-
dated discretion in determining a defendant's sentence once the
defendant has served the minimum term which was imposed
(MCL 769.8; MSA 28.1080).

11. CRIMINAL LAW — ENTRAPMENT — TEST.

The objective test of entrapment is whether police conduct in-
duced or instigated the commission of a crime by one not ready
or willing to commit the crime.

12. CRIMINAL LAW — PROBABLE CAUSE — INVESTIGATIONS.

Police do not need probable cause prior to beginning an investiga-
tion.

13. CRIMINAL LAW — ENTRAPMENT — EVIDENTIARY HEARINGS.

A trial court has no reason to conduct an evidentiary hearing on
the issue of entrapment where a defendant fails to allege
anything which would constitute a prima facie showing of a
valid defense of entrapment.

14. CRIMINAL LAW — PROBABLE CAUSE — DETERMINATION BY MAGIS-
TRATE.

A magistrate's determination of probable cause to believe a
defendant committed a crime will not be upset on appeal unless
a clear abuse of discretion is shown.

15. CRIMINAL LAW — MOTIONS TO DISMISS OR DIRECT A VERDICT —
SUFFICIENCY OF EVIDENCE.

A trial court, in considering a motion to dismiss or direct a
verdict, must first decide if the evidence introduced at the time
the motion was made, viewed in the light most favorable to the
prosecution, is insufficient to justify a reasonable man in con-
cluding that all the elements of the crime were established
beyond a reasonable doubt.

16. CONSPIRACY — CRIMINAL LAW — DEFINITION.

Criminal conspiracy is a mutual understanding or agreement
between two or more persons, express or implied, to do or
accomplish some criminal or unlawful act.

17. CONSPIRACY — CRIMINAL LAW — NECESSARY PROOF.

The gist of a criminal conspiracy lies in the unlawful agreement among the parties, and direct proof of an agreement is unnecessary, nor must the agreement be formal; it is sufficient if circumstances, acts, and conduct of the parties establish an agreement in fact and the conspiracy may be established by circumstantial evidence and may be based on inferences.

18. CRIMINAL LAW — AIDING AND ABETTING — DEFINITIONS.

One aids and abets another to commit a crime where the former takes conscious action seeking to make the criminal venture succeed.

19. CRIMINAL LAW — JOINT TRIALS — JUDICIAL DISCRETION — STATUTES.

The decision whether to hold a joint or separate trial in a criminal case is discretionary with the trial court (MCL 768.5; MSA 28.1028).

20. CRIMINAL LAW — JOINT TRIALS — GROUNDS FOR SEVERANCE.

A defendant does not have a right to a separate trial, but a severance should be granted where the defenses of several defendants jointly indicted are antagonistic to each other, and, in moving a court for a separate trial, a defendant must show that his substantial rights will be prejudiced by a joint trial.

21. CRIMINAL LAW — JOINT TRIALS — MOTIONS FOR SEVERANCE — SUPPORTING AFFIDAVITS.

A motion for a separate trial must include a supporting affidavit defining the inconsistencies between the defenses of defendants to be jointly tried before an abuse of discretion will be found in the refusal of a trial court to grant a separate trial, and, in the absence of an affirmative showing of prejudice to a defendant's substantial rights, such a refusal is not an abuse of discretion.

22. CRIMINAL LAW — PLEA BARGAINS — PROSECUTOR'S RECOMMENDATIONS — ABUSE OF JUDICIAL DISCRETION.

A trial court, in deciding whether to accept a prosecutor's recommendation and a defendant's offer to plead guilty to a lesser included offense, should take into consideration such factors as the offense with which the defendant was charged, the surrounding factual circumstances, the lesser included offenses of the plea bargain, and the opinions of other interested parties, and, following such considerations, a refusal of a trial court to accept the recommendations of a prosecutor may only be disturbed for an abuse of discretion.

23. CRIMINAL LAW — PLEA BARGAINS — ABUSE OF PROSECUTORIAL DISCRETION.

A trial court can refuse a prosecutor's recommendation to accept a plea bargain if it finds that the prosecutor has abused his discretion.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Michael R. Mueller,* Director, Prosecutor's Repeat Offenders Bureau, and *Raymond P. Walsh,* Assistant Prosecuting Attorney, for the people.

*Joel S. Brown (Carl Ziemba,* of counsel), and *P. E. Bennett,* Assistant State Appellate Defender, for defendants on appeal.

Before: R. M. MAHER, P.J., and N. J. KAUFMAN and F. J. BORCHARD,* JJ.

## ON REMAND

PER CURIAM. Defendants Arnold Wright and Salvadore Perez were charged with conspiracy to deliver heroin and delivery of heroin. MCL 750.157a; MSA 28.354(1), MCL 335.341(1)(a); MSA 18.1070(41)(1)(a). Wright was charged with three counts of delivery and one count of conspiracy, while Perez was charged with one count of delivery and one count of conspiracy. Following a joint trial with another codefendant, Carol McCuin, who is not involved in this appeal, the defendants were convicted as charged. Wright was sentenced to four concurrent terms of 13 years, 4 months to 20 years of imprisonment. Perez was sentenced to five years of probation on condition that he leave the country under a deportation order within two days

---

* Circuit judge, sitting on the Court of Appeals by assignment.

of sentencing, after which his probation would be suspended.

The defendants appealed their convictions. We reversed and remanded for a new trial on the basis of an improper jury instruction on intent. *People v Wright,* 78 Mich App 246; 259 NW2d 443 (1977). The Supreme Court reinstated Wright's conviction, finding the error to be harmless based on the strength of the prosecution's case against him. The Supreme Court agreed that Perez was entitled to reversal and a new trial. *People v Wright,* 408 Mich 1; 289 NW2d 1 (1980). The case was remanded to this Court in order that we might consider the other claims of error raised by the defendants but not previously discussed by us. For a full statement of the facts, see the Supreme Court opinion, 408 Mich 1, 12-18.

*Issues raised by both defendants:*

I. Did the prosecutor's improper remarks in closing argument, to which the defendants objected, deprive the defendants of a fair and impartial trial so as to require reversal of their convictions?

In his rebuttal summation, the prosecutor made the following remarks to the jury:

"I don't think counsel has given you any basis for reasonable doubt in this case. And with respect to his lawyer's reward—with respect to his lawyer's reward, I guess counsel indicated it is particularly refreshing when you know you are protecting an innocent man. I suggest it is also particularly refreshing when you know you are protecting the community in which you live.

\* \* \*

"These defendants here, ladies and gentlemen,—these three defendants are the drug traffickers. They are those that supply the heroin to junkies in the city. And

the cost of that, I think, ladies and gentlemen, is known to us all.

"It's measured in the cost of the loss of personal property that these junkies have to steal in order to support their habits. It's measured by the loss of human life by people who no longer can live decent lives. That's the cost. Not just $11,000. Not just $48,000 or $46,000 that we are talking about here. The cost is much greater than that.

"I suggest to you, ladies and gentlemen, that there is only one verdict in accordance with fairness, justice, and honesty, and that is guilty as charged with respect to all three of these defendants."

In general, "civic duty" arguments are condemned because they inject into the trial issues broader than a particular defendant's guilt or innocence of the charges and encourage the jurors to suspend their own powers of judgment.

In *People v Farrar,* 36 Mich App 294, 298-299; 193 NW2d 363 (1971), this Court adopted the language of the ABA Project on Standards for Criminal Justice, The Prosecution Function, Std. 5.8(d), as applicable to the issue:

"The prosecutor may not subtly convert the presumption of innocence into a presumption of guilt by appealing to the jurors to perform a civic duty to support the police:

" 'The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict.' "

In *People v Gloria Williams,* 65 Mich App 753, 756; 238 NW2d 186 (1975), this Court reversed the conviction after the prosecutor had argued to the jury that they could affect the drug traffic in the

City of Detroit by finding the defendant guilty. The Court stated:

"We recognize, too, that jurors share the average citizen's desire to eliminate the narcotics traffic. In such an emotion-laden situation, sensibilities are easily inflamed. Because emotional reaction to social problems should play no role in the evaluation of an individual's guilt or innocence, prosecutors must exercise special care to avoid arousing jurors' emotions concerning such issues.

"In the instant case, by arguing that the jurors had an 'opportunity to effect *[sic]* the drug traffic in this city', the prosecutor appealed to the jurors' fears and encouraged them to go outside the evidence and decide the case on the basis of their desire to alleviate the drug problem. This type of prosecutorial argument does not comport with the mandate of *Farrar, supra,* and it will not be allowed by this Court. Consequently, defendant's conviction must be reversed."

In *People v Biondo,* 76 Mich App 155; 256 NW2d 60 (1977), the defendant was charged with breaking and entering a business establishment. In his closing argument, the prosecutor discussed the fact that businessmen were worried about crime and that if they left the city, its tax base would become depleted and the city would die. The prosecutor reminded the jurors about their responsibility to the city and stressed the fact that the complainant was a businessman who paid taxes. This Court reversed defendant's conviction, saying that the appeal to the jury's social fears was irrelevant to the sole issue at trial, that being Mr. Biondo's guilt or innocence.

The standard for harmless error involves a dual inquiry: (1) was the error so offensive to the maintenance of a sound judicial system as to require reversal, and (2), if not, was the error harmless

beyond a reasonable doubt? *People v Sherman Hall,* 77 Mich App 456; 258 NW2d 517 (1977). The purpose of the first criterion is to deter prosecutorial and police misconduct. *People v Swan,* 56 Mich App 22; 223 NW2d 346 (1974), *People v Reese,* 86 Mich App 50; 272 NW2d 192 (1978). The purpose of the second criterion is to safeguard the decisional process. Thus, if it is reasonably possible that, in a trial free of the error complained of, even one such jury member might have voted to acquit the defendant, the error was not harmless, and the defendant must be retried. *Swan, supra,* 33.

We conclude that the prosecutor in the instant case stepped over permissible bounds and injected reversible error into the proceedings. We cannot view the error as harmless under the first prong of the test, for unless we enforce the rules, we encourage their violation. *Farrar, supra,* 299. This is especially true because defendants objected to the improper remarks and were overruled by the trial court. Thus, the error was compounded. See *People v Brocato,* 17 Mich App 277, 304-305; 169 NW2d 483 (1969). We would, therefore, reverse the convictions of Wright and Perez and would remand the case for a new trial.

II. Did the trial court err in admitting into evidence two tape recordings obtained without a warrant by means of participant monitoring where there was no objection made at trial on the ground of an illegal search and seizure?

At issue is the admission of Exhibit #6, a cassette tape made of an alleged drug transaction on September 18, 1974, which was obtained by means of a transmitting microphone attached to undercover officer Fleming. Defense counsel objected on the basis that the tape was unintelligi-

ble, that its contents were inadmissible hearsay, and that the prosecutor had said he would not use it in his case in chief. The trial court admitted Exhibit #6, the tape, and Exhibit #10, which was a transcript of the tape. The prosecutor then sought to admit Exhibit #7, a cassette tape of a telephone conversation on September 28, 1974, made from a telephone in the apartment of the informant, Moss, of a telephone conversation between defendant Wright and Moss. Defendant objected on the basis that the tape was hearsay, but was overruled. This exhibit was admitted along with Exhibit #9, a transcript of the tape.

With respect to the Fourth Amendment protection against unreasonable search and seizure, Federal law does not require a search warrant for participant recording, *Lopez v United States,* 373 US 427; 83 S Ct 1381; 10 L Ed 2d 462 (1963), or participant monitoring, *United States v White,* 401 US 745; 91 S Ct 1122; 28 L Ed 2d 453 (1971). However, in *People v Beavers,* 393 Mich 554; 227 NW2d 511 (1975), the Michigan Supreme Court interpreted the Michigan constitutional provision governing searches and seizures, Const 1963, art 1, § 11, to apply the search warrant requirement to participant monitoring. This rule was given prospective application only. Subsequently, in *People v Hall,* 88 Mich App 324; 276 NW2d 897 (1979), this Court extended the *Beavers* rationale to include participant recordings. See also, *People v Taylor,* 93 Mich App 292; 287 NW2d 210 (1979).

Since the recordings in question occurred prior to the decision in *Beavers,* that decision is not applicable, and we are constrained to hold that admission of the recordings in the absence of a warrant did not constitute reversible error under then-existing Michigan law. *People v Amison,* 70

Mich App 70, 75-76; 245 NW2d 405 (1976), *People v Pulley,* 66 Mich App 321, 326-327; 239 NW2d 366 (1976).

*Issues raised by Wright only:*

III. Where a statute authorizes both a fine and imprisonment, did the trial court err in imposing such a sentence with the additional requirement that defendant must first pay the fine in order to qualify for an early parole?

The defendant Wright was convicted of one count of conspiracy to deliver heroin and of three counts of delivery of heroin. He was sentenced to serve 13 years, 4 months to 20 years on each count, the sentences to run concurrently. In addition, defendant was fined $151,000, which included $25,000 for each count, $10,500 in court costs, and $40,500 for his maintenance while in prison. Furthermore, the trial court ordered the $151,000 to be paid prior to any early release or parole from prison, provided, however, that under no circumstances was he to be detained longer than the maximum of 20 years.

The defendant contends that this sentence violates the indeterminate sentence statute, MCL 769.8; MSA 28.1080, because, in the face of his inability to pay the fine, there was in reality no minimum sentence, but only a maximum sentence.

Defendant was convicted of delivery of heroin, MCL 335.341(1)(a); MSA 18.1070(41)(1)(a), which carries penalty of imprisonment for not more than 20 years, or a fine of not more than $25,000, or both. MCL 769.5; MSA 28.1077 provides as follows:

"Sec. 5. Whenever it is provided that an offender shall be punished by imprisonment and a fine, such offender may at the discretion of the court, be sentenced to be punished by such imprisonment without

the fine or by such fine without the imprisonment; and whenever it is provided that an offense shall be punished by fine or imprisonment, the court may impose both such fine and imprisonment in its discretion. *If the court shall impose both a fine, costs and imprisonment in any state prison or reformatory the offender shall be detained in said prison or reformatory until said fine and costs are paid, not exceeding however, the additional time expressed in said sentence for the non-payment of the same."* (Emphasis added.)

The indeterminate sentence statute, MCL 769.8; MSA 28.1080, at the time in question, provided in pertinent part:

"Sec. 8. When any person shall hereafter be convicted for the first * * * time of crime committed after this act takes effect, the punishment for which prescribed by law may be imprisonment in the state prison at Jackson, the Michigan reformatory at Ionia, the state house of correction and branch of the state prison in the upper peninsula, the Detroit house of correction, or any other prison, *the court imposing sentence shall not fix a definite term of imprisonment, but shall fix a minimum term except as hereinafter provided.* The maximum penalty provided by law shall be the maximum sentence in all cases except as herein provided and shall be stated by the judge in passing sentence." (Emphasis added.)

The Supreme Court explained in *People v Tanner,* 387 Mich 683, 690; 199 NW2d 202 (1972), that the purpose of the Legislature in enacting the indeterminate sentence statute was to give corrrection authorities some discretion in the length of a prisoner's sentence. It held, therefore, that any sentence which provides for a minimum exceeding two-thirds of the maximum is improper as failing to comply with the indeterminate sentence statute.

In his motion for a new trial, defendant argued

his inability to pay the fines and costs and stated that the imposition of these fines violated the constitutional guarantee of equal protection regardless of economic status. The trial court said that since defendant would not be obliged to serve beyond the maximum statutory limit, there was no violation of constitutional law.

In *Williams v Illinois,* 399 US 235, 242; 90 S Ct 2018; 26 L Ed 2d 586 (1970), the United States Supreme Court considered a statutory scheme whereby defendants who did not pay their fines were able to "work off" the fines at the rate of $5 per day, resulting in imprisonment beyond the statutory maximum. The Court said:

"It is clear, of course, that the sentence was not imposed upon appellant because of his indigency but because he had committed a crime. And the Illinois statutory scheme does not distinguish between defendants on the basis of ability to pay fines. But, as we said in *Griffin v Illinois* [351 US 12; 76 S Ct 585; 100 L Ed 891 (1956)], 'a law nondiscriminatory in its face may be grossly discriminatory in its operation.' *Id.,* at 17 n 11. Here the Illinois statute as applied to Williams works an invidious discrimination solely because he is unable to pay the fine. On its face the statute extends to all defendants an apparently equal opportunity for limiting confinement to the statutory maximum simply by satisfying a money judgment. In fact, this is an illusory choice for Williams or any indigent who, by definition, is without funds. Since only a convicted person with access to funds can avoid the increased imprisonment, the Illinois statute in operative effective exposes only indigents to the risk of imprisonment beyond the statutory maximum. By making the maximum confinement contingent upon one's ability to pay, the State has visited different consequences on two categories of persons since the result is to make incarceration in excess of the statutory maximum applicable only to those without the requisite resources to satisfy the money portion of the judgment." (Footnotes omitted.)

The Court noted that its decision did not apply to a defendant's willful refusal to pay a fine or court costs. See also, *Tate v Short,* 401 US 395; 91 S Ct 668; 28 L Ed 2d 130 (1971), where the Supreme Court held that imprisonment of an indigent without means to pay accumulated traffic fines in a state with a "fines only" policy for traffic offenses constitutes impermissible discrimination on the basis of economic status.

This Court has previously held that revocation of probation for failure to pay a fine or costs by one who is unable to pay constitutes a denial of equal protection as guaranteed by the Fourteenth Amendment. *People v Terminelli,* 68 Mich App 635; 243 NW2d 703 (1976), *People v Billy Williams,* 66 Mich App 67; 238 NW2d 407 (1975).

We would find, by analogy, that the legislative intent, as embodied in the indeterminate sentence statute, would be thwarted if an indigent defendant were precluded from serving anything less than the maximum sentence due to his inability to pay the fines and costs imposed. This situation would render the minimum sentence illusory and would constitute an invidious discrimination on the basis of economic status.

We would go further and say that even if defendant were financially able to pay the fine, the trial court would be in violation of the indeterminate sentence statute as it is interpreted in *Tanner, supra,* if the minimum sentence were made conditional on payment of the fine. The trial judge cannot deprive the parole board of its legislatively mandated discretion in determining a defendant's sentence once the defendant has served the minimum term which was imposed.

We have previously indicated that defendant Wright is entitled to reversal and a new trial

based on Issue I. Should the defendant be convicted anew, we caution the trial court that it cannot condition defendant's early release, subsequent to serving the minimum sentence, on the payment of any fine which may be imposed.

IV. Did the trial court err reversibly in failing to conduct an evidentiary hearing on the issue of entrapment, *sua sponte,* where defendant had previously testified and denied any participation in the alleged offense?

Defendant bases his entrapment issue on the fact that the police contacted Thomas Moss, the informant, and asked him to help develop a case against defendant Wright. Moss claimed to be related to the defendant by marriage. The defendant alleges further that "the investigation commenced without any showing that there was a basis for suspecting any wrongdoing by defendant Wright".

Defendant has failed to allege anything which ould constitute a prima facie showing that he had a valid defense of entrapment. Michigan has adopted an objective test of entrapment in *People v Turner,* 390 Mich 7; 210 NW2d 336 (1973), which condemns improper police conduct that could induce or instigate the commission of a crime by one not ready or willing to commit it. There was no indication that Moss instigated the alleged criminal act, nor is there any impropriety in the fact that Moss was tangentially related to defendant. In any event, the police need not have "probable cause" prior to beginning an investigation. Thus, defendant's issue is without merit, as the trial court had no reason to conduct an evidentiary hearing on the issue of entrapment.

*Issues raised by defendant Perez:*

V. Did the trial court err in denying defendant

Perez's motion to dismiss the charge of conspiracy to deliver heroin on the basis of insufficient evidence?

A magistrate's determination of probable cause to believe defendant committed the crime will not be upset on appeal unless a clear abuse of discretion is shown. *People v Juniel,* 62 Mich App 529; 233 NW2d 635 (1975), *People v Oster,* 67 Mich App 490; 241 NW2d 260 (1976). Further, a trial court, in considering a motion to dismiss or direct a verdict, must first decide if the evidence introduced at the time the motion was made, viewed in the light most favorable to the prosecution, is insufficient to justify a reasonable man in concluding that all the elements of the crime were established beyond a reasonable doubt. *People v John Earl Scott,* 72 Mich App 16; 248 NW2d 693 (1976), *People v Benevides,* 71 Mich App 168; 247 NW2d 341 (1976), *People v Hampton,* 407 Mich 354; 285 NW2d 284 (1979).

Criminal conspiracy is a mutual understanding or agreement between two or more persons, express or implied, to do or accomplish some criminal or unlawful act. *People v Atley,* 392 Mich 298, 311; 220 NW2d 465 (1974). To prove conspiracy in the instant case, it must be established that the defendants intended to deliver heroin, and to establish that intent, there must be knowledge of the unlawful purpose of delivery of heroin. The gist of the offense lies in the unlawful agreement. Direct proof of agreement is not required, nor is it necessary that a formal agreement be proven. It is sufficient if circumstances, acts, and conduct of the parties establish an agreement in fact. Also, the conspiracy may be established by circumstantial evidence and may be based on inferences. *People v Thomas Hintz,* 69 Mich App 207, 217-218; 244 NW2d 414 (1976).

Defendant submits that both at preliminary examination and at trial there was sufficient evidence to establish a conspiracy between defendant Wright and McCuin to deliver heroin. Defendant only challenges the sufficiency of the evidence regarding his participation.

The testimony indicates the extent of defendant's participation in the alleged conspiracy as follows: on September 27, 1974, at 5:30 p.m., Mr. Moss and Police Officer Fleming went to Carol McCuin's home with the intention of purchasing 1/8 of a kilogram of heroin. Mr. Wright arrived shortly thereafter, but the sale did not take place. Mr. Moss and Arnold Wright left the house and drove around for the next six hours. Police Officer Fleming remained at the house with Carol McCuin. Shortly after midnight, a Mexican male and a Mexican female arrived at Ms. McCuin's home. The man, later identified as Salvadore Perez, was directed upstairs, while the female waited downstairs with Officer Fleming. Mr. Moss and Mr. Wright arrived, and Arnold Wright immediately went upstairs. Wright and Perez came downstairs and, after a short introduction of Perez to Fleming and Moss, Perez and his female companion left. Immediately after Mr. Perez had departed, Arnold Wright pointed upstairs, Carol McCuin retrieved the heroin, and the sale was completed.

The foregoing facts leading up to the heroin sale reasonably infer that Mr. Perez participated in and provided the essential element necessary to the continuance of the conspiracy, that is, the heroin itself. Thus, viewing this evidence in the light most favorable to the prosecution, it cannot be said that the trial court erred in refusing to dismiss the conspiracy count against the defendant Perez or abused its discretion in binding him over for trial.

VI. Did the trial court err in denying defendant's motion to dismiss the charge of aiding and abetting the delivery of heroin on the basis of insufficient evidence?

As we have previously stated, the standard of review of a motion to dismiss or direct a verdict is whether the evidence, viewed in the light most favorable to the prosecution, is sufficient to justify a reasonable man in concluding that all the elements of the crime were established beyond a reasonable doubt. *Hampton, supra,* 368. With respect to a magistrate's decision to bind over, the review test to be applied is whether there is an abuse of discretion. *Juniel, supra.*

Defendant contends that there is no evidence showing he aided or abetted in the delivery of heroin.

It has been held that one aids and abets another to commit a crime where the former takes conscious action seeking to make the criminal venture succeed. *People v Gordon,* 60 Mich App 412, 418; 231 NW2d 409 (1975). Although defendant was not present when the actual delivery took place, the timing of defendant's arrival after a six-hour wait and the delivery of the heroin after defendant's departure reasonably leads to the conclusion that the defendant delivered the heroin to the house and, thus, aided the delivery of heroin. The magistrate did not abuse his discretion in binding over, nor did the court err in refusing to dismiss the charges, as the evidence, admittedly circumstantial, when viewed in the light most favorable to the prosecutor, established that the defendant committed the crime for which he was charged.

VII. Did the trial court err in denying defendant Perez's pretrial motion for a separate trial?

Defendant Perez moved for a separate trial from

the other defendants, merely alleging that otherwise he would "be prejudiced substantially in his rights". There was no showing that the three defendants had antagonistic defenses. The trial court denied the motion.

In *People v Hurst,* 396 Mich 1, 6-9; 238 NW2d 6 (1976), the Michigan Supreme Court held that the decision whether to hold a joint or separate trial is discretionary with the trial court, citing MCL 768.5; MSA 28.1028. The Court also stated that a defendant does not have a right to a separate trial, but that a severance should be granted where the defenses of several defendants jointly indicted are antagonistic to each other. Further, in moving the court for separate trial, the defendant must show that his "substantial rights" will be prejudiced by a joint trial. See also, *People v Carroll,* 396 Mich 408; 240 NW2d 722 (1976). A supporting affidavit defining the inconsistencies between the defenses of the parties is required before an abuse of discretion is found. *People v Mullane,* 256 Mich 54, 56; 239 NW 282 (1931).

In the absence of an affirmative showing of prejudice to the defendant's substantial rights, the refusal of a trial court to grant a separate trial is not an abuse of discretion. We find no reversible error. *People v Schram,* 378 Mich 145, 156; 142 NW2d 662 (1966), *People v Scott,* 61 Mich App 91, 94; 232 NW2d 315 (1975).

VIII. Did the trial court abuse its discretion in denying defendant Perez's attempt to enter a plea of guilty to a lesser included offense during the course of the trial?

Prior to trial, the prosecutor conducted plea negotiations with the three defendants and their counsel. Mr. Perez was to be allowed to plead to a reduced charge of attempted delivery of heroin.

This offer was contingent upon the other defendants also pleading to a reduced charge. The other defendants refused to accept the offer, and the prosecutor rescinded the negotiated offer with respect to all the defendants.

Midway through the trial, counsel for Mr. Perez discussed with the prosecutor the possibility of Mr. Perez pleading to the reduced charge of attempted delivery of heroin. The prosecutor indicated that he would not object to such a plea, but that it would be within the trial court's discretion whether or not to accept it. The trial court refused to accept the offered plea, stating:

"I think if this had been the posture of the situation before trial before I heard any of the testimony and before I came to the conclusion that basically all you have here is a question of credibility, and that if the jury believes the testimony that they have heard, in all likelihood they will return a verdict of guilty, I think I might have been disposed to permit not only this defendant, but anyone of the other defendants to accept the prosecutor's offer of a plea to a lesser, included charge, notwithstanding it came on the day of trial.

"But when I listen to the testimony now and I realize that if these witnesses are to be believed, this is not just a little penny-ante case of pushing ten-dollar and twenty-dollar packs. This is approaching the nature of big business. And when I realize that prior to trial each defendant had been—his counsel, at least, had been given access to practically everything that has come out here in trial, still their position was that no remorse, no desire to cooperate. And I can't see at this late stage, after three days of tying up this jury and tying up this Court, giving breaks to any defendant. And that really is what it amounts to."

In *People v Matulonis,* 60 Mich App 143, 148-149; 230 NW2d 347 (1975), this Court stated:

"We do not hold that in no circumstances outside of the ambit of the court rules can a trial court refuse to accept the prosecutor's recommendation and the defendant's offer to plead guilty to a lesser included offense. Indeed, there may well be situations in which the public interest and the proper administration of justice justify such a decision."

Further, the Court stated that the trial court should take into consideration such factors as the offense with which the defendant was charged, the surrounding factual circumstances, the lesser included offenses of the plea bargain, and the opinions of other interested parties in deciding whether to accept a prosecutor's recommendation. The trial court can refuse to accept a prosecutor's recommendation in a plea bargain if it finds that the prosecuting attorney has abused his prosecutorial discretion.

In the case at bar, the trial court took into consideration the factors enunciated in *Matulonis, supra,* and it cannot be said that the trial court abused its discretion in refusing to accept the prosecutor's recommendation.

## Conclusion

We find that the prosecutor's improper "civic duty" remarks in his closing argument constituted reversible error and would entitle both defendants to a new trial. Additionally, we find that defendant Wright's sentence was improper. A trial court cannot deprive the parole board of its discretion to release a defendant once he has served the minimum sentence imposed simply because he has not paid the fine. We find no other errors which would require reversal.

BORCHARD, J., did not participate.