PEOPLE v PLUNKETT

Docket No. 284943. Submitted November 4, 2008, at Lansing. Decided
December 16, 2008, at 9:05 a.m. Leave to appeal sought.

The 1st District Court, Terrence P. Bronson, J., bound Ronald J.
Plunkett over for trial in the Washtenaw Circuit Court on
charges of delivering a controlled substance (heroin), thereby
causing death, and delivering less than 50 grams of heroin.
Evidence at the preliminary examination indicated that the
defendant had driven Tracy Corson to a drug dealer's location
and given her money for her purchase of heroin and that Corson
had shared the heroin with Tiffany Gregory within an hour of
Gregory's death from a drug overdose. The defendant, whom
the prosecution claimed constructively delivered, or aided and
abetted the drug dealer's delivery of, the heroin to Corson,
moved to quash the bindover in the circuit court, and that court,
Melinda Morris, J., granted the motion. The prosecution ap-
pealed by delayed leave granted.

The Court of Appeals *held*:

The defendant did not constructively deliver the heroin, nor did
he aid and abet its delivery.

1. A person constructively delivers a controlled substance
when he or she directs another person to convey the controlled
substance under his or her direct or indirect control to a third
person or entity. Here, the heroin was not under the defendant's
control, nor did the defendant direct the drug dealer to transfer
the heroin to Corson.

2. The phrase "aids and abets" describes any assistance given
to the perpetrator of the crime by words or deeds that are intended
to encourage, support, or incite the commission of that crime. The
statutes under which the defendant was charged, MCL 750.317a
and MCL 333.7401(2)(a)(*iv*), criminalize the actions of a person
who delivers a controlled substance. Here, no evidence was pre-
sented to support a finding that the defendant aided and abetted
the drug dealer in delivering the heroin to Corson.

Affirmed.

SCHUETTE, J., dissented and would reverse and remand for further proceedings, stating that there was sufficient evidence to support a conclusion that the defendant aided and abetted the delivery of heroin to Corson. The defendant, by driving Corson and giving her money for the purchase of heroin, performed acts that assisted the commission of the crimes charged.

1. CONTROLLED SUBSTANCES — CONSTRUCTIVE DELIVERY OF CONTROLLED SUBSTANCES.

A defendant constructively delivers a controlled substance by directing another person to convey the controlled substance under the defendant's direct or indirect control to a third person or entity.

2. CRIMINAL LAW — AIDING AND ABETTING CRIMES.

To aid and abet the commission of a crime is to give any assistance to the perpetrator of the crime that encourages, supports, or incites the commission of the crime.

*Michael A. Cox*, Attorney General, *B. Eric Restuccia*, Solicitor General, *Brian L. Mackie*, Prosecuting Attorney, and *David A. King*, Senior Assistant Prosecuting Attorney, for the people.

*John A. Shea* and *Kevin S. Gentry* for the defendant.

Before: FITZGERALD, P.J., and BANDSTRA and SCHUETTE, JJ.

FITZGERALD, P.J. The prosecution appeals by delayed leave granted the circuit court's order granting defendant's motion to quash the district court's bindover for trial on charges of delivery of a controlled substance (heroin), thereby causing death, MCL 750.317a; and delivery of less than 50 grams of heroin, MCL 333.7401(2)(a)(*iv*).[1] We affirm.

---

[1] The circuit court denied defendant's motion to quash the district court's order binding defendant over on one count of delivery of less than 50 grams of cocaine, MCL 333.7401(2)(a)(*iv*), and one count of maintaining a drug house, MCL 333.7405(1)(d).

## I. FACTS AND PROCEDURAL HISTORY

The following relevant facts were established at the preliminary examination. Tracy Corson was a prostitute who first met defendant through a drug dealer, Darryl Shavers, who informed her that defendant wanted the company of a female who would "be provided drugs to go and get high at his house." Shavers drove Corson to defendant's apartment in February 2006 and provided crack cocaine to defendant before leaving the apartment. Corson and defendant used crack cocaine and watched pornography throughout the evening. Defendant gave Corson $380 when she left.

Corson again contacted defendant on May 20, 2006, and met with him on that day "to get high and to get money from him." Corson moved in with defendant during the Memorial Day weekend of 2006. Corson stopped working as a prostitute after moving in with defendant and was not employed. According to Corson, she and defendant drove to Detroit daily to purchase drugs from a drug dealer, Harold Spencer, with whom Corson was acquainted before meeting defendant. She indicated that "on average we would buy around a [sic] eight ball of crack and a bundle, if not more, of heroin." According to Corson, she used crack cocaine and heroin, but defendant used only crack cocaine. Corson used the entire amount of heroin in one day, while the crack cocaine lasted "a few hours" for Corson and defendant.

In early June 2006, Corson contacted Tiffany Gregory, a childhood friend and the victim of the alleged homicide. The two met at Gregory's apartment twice in June. During the first meeting, Corson introduced Gregory to heroin and taught her how to prepare the drug. During the second meeting, Gregory loaned Corson $100 and drove Corson to Detroit to purchase

drugs. The two then returned to Gregory's apartment and used crack cocaine and heroin.

On June 15, 2006, defendant and Corson traveled to Detroit in defendant's vehicle to purchase drugs from Spencer. Defendant gave Corson $200 to purchase crack cocaine and heroin. Corson left defendant's vehicle and entered Spencer's vehicle to make the purchase. After handing Spencer the money and receiving the heroin and crack cocaine, Corson returned to defendant's vehicle. On the drive home from Detroit, defendant and Corson smoked crack cocaine, and Corson injected three packets of heroin.

That same night, Gregory went to a bar with Andrew Voltattorni. Gregory consumed alcohol throughout the evening and left the bar when it closed at 2:00 a.m. Later, Gregory, her roommate Ashley, and Voltattorni went to a pizza restaurant. Gregory received several telephone calls while at the restaurant, including one from Corson. After talking to Corson on the phone, Gregory spoke to Voltattorni about using heroin. Gregory told Voltattorni that Corson owed her $20 and she wanted to be paid back with $20 worth of heroin.

Gregory called Corson at approximately 3:00 a.m. on June 16, 2006, asking for drugs and reminding Corson that she owed Gregory $20. Corson invited Gregory to defendant's apartment. Gregory arrived at 3:30 a.m., and she was intoxicated but able to walk and talk. Corson, Gregory, defendant, and his friend Veronica smoked crack cocaine in the living room. Afterward, Gregory and Corson went into a bedroom and injected themselves with heroin.[2] Gregory thereafter slumped over and Corson called for help. While Veronica administered cardiopulmonary resuscitation (CPR) to Gre-

---

[2] According to Corson, defendant did not possess any heroin and did not know that Corson was going to give heroin to Gregory.

gory, Corson hid the drugs and drug paraphernalia in the laundry room. Gregory was dead by the time emergency personnel arrived at 4:30 a.m.[3]

Dr. Yung Chung performed an autopsy on Gregory and concluded that the death was accidental and caused by "multiple drug intoxication." She testified that Gregory's body had a high morphine content of 269 nanograms, cocaine metabolites, and a high alcohol content. She indicated that heroin changes into morphine once it enters the body and that Gregory had three times the normal recreational-use level of that drug in her body. Dr. Chung opined that Gregory died from a heroin overdose that was exacerbated by the alcohol she had consumed.

Following the presentation of the proofs, defendant argued against a bindover on the charges of delivery of heroin causing death and delivery of less than 50 grams of heroin on the ground that there was no evidence that defendant ever possessed the heroin or transferred the heroin to anyone. He maintained that, at most, the prosecutor had shown that defendant funded Corson's heroin purchase. He also maintained that a purchaser of heroin could not be convicted of aiding and abetting the delivery of heroin. The prosecutor argued that even though defendant had not possessed the heroin, he provided the transportation to Detroit and the money used to purchase the heroin. The district court concluded that defendant drove Corson to buy drugs on a regular basis, that he gave her money to purchase the drugs, and that the heroin purchased on June 15 caused Gregory's death. On that basis, the court found sufficient probable cause to bind defendant over on all four counts.

---

[3] Officer Eric Bowles testified that Gregory was not breathing, her nose and ears were blue in color, and she appeared dead.

Defendant moved to quash the bindover, asserting that with respect to the charges of delivery of heroin causing death and delivery of heroin, the prosecutor failed to present evidence on the element of delivery. Specifically, defendant asserted that with respect to the charge of delivery of heroin causing death, the prosecutor failed to present evidence that defendant delivered heroin to another person. With respect to the charge of delivery of less than 50 grams of heroin, defendant asserted that the prosecutor failed to present evidence that defendant delivered to Corson the heroin that caused Gregory's death. Following argument on the motion, the circuit court issued a written opinion, ruling in relevant part that defendant's actions did not constitute delivery of heroin to Corson under either statute. The circuit court concluded that the district court had abused its discretion in binding defendant over on the charges of delivery of heroin causing death and delivery of less than 50 grams of heroin.

## II. THE ELEMENT OF DELIVERY

The prosecution argues that probable cause existed to bind defendant over on the charges of delivery of heroin causing death, MCL 750.317a, and delivery of less than 50 grams of heroin, MCL 333.7401(2)(a)(iv). MCL 750.317a provides:

A person who delivers a schedule 1 or 2 controlled substance, other than marihuana, to another person in violation of section 7401 of the public health code . . . that is consumed by that person or any other person and that causes the death of that person or other person is guilty of a felony punishable by imprisonment for life or any term of years.[4]

---

[4] MCL 750.317a became effective on January 1, 2006, and there are no reported decisions interpreting it.

As applied to this case, the plain language of MCL 750.317a indicates that a person is guilty of a felony if the person delivers heroin to another person, if that heroin is consumed by the person to whom it is delivered or by "any other person," and if, as a result, the person who consumes it dies. And, under MCL 333.7401(2)(a)(*iv*), a defendant is guilty if he or she delivers less than 50 grams of heroin to another.

The critical question presented by the prosecution in this case with regard to both statutes is whether the prosecution presented sufficient evidence to establish the element of delivery; that is, that defendant delivered the heroin to Corson. The prosecution maintains that defendant could be found guilty of delivering heroin to Corson on two theories: that defendant constructively delivered the heroin to Corson or that defendant aided and abetted the delivery of the heroin to Corson.

### A. CONSTRUCTIVE DELIVERY

The prosecution asserts that defendant could be found guilty of constructively delivering heroin to Corson on the basis of evidence that he provided the transportation and the money used to procure the heroin.

The primary goal of statutory interpretation is to give effect to the intent of the Legislature. *People v Williams,* 475 Mich 245, 250; 716 NW2d 208 (2006). "We begin by examining the plain language of the statute; where that language is unambiguous, we presume that the Legislature intended the meaning clearly expressed—no further judicial construction is required or permitted, and the statute must be enforced as written." *People v Morey,* 461 Mich 325, 330; 603 NW2d 250 (1999).

The term "deliver" is not defined in the statute. The term is, however, defined in the Public Health Code, which is expressly referenced in MCL 750.317a, as follows:

> "Deliver" or "delivery" means the actual, constructive, or attempted transfer from 1 person to another of a controlled substance, whether or not there is an agency relationship. [MCL 333.7105(1).]

The record does not support the finding of either an actual or attempted transfer of heroin from defendant to Corson. The prosecution argues that defendant constructively delivered the heroin to Corson by providing the transportation to meet the drug dealer and by giving Corson the money used to purchase the heroin. The prosecution reasons that but for defendant's participation, Corson would not have possessed the heroin and thus could not have provided it to Gregory.

The term "constructive delivery" is not defined in either MCL 750.317a or the Public Health Code. Nor does Black's Law Dictionary define the term in any relevant manner. But, Black's Law Dictionary (8th ed), p 1535, defines "constructive transfer" as "a delivery of an item — [especially] a controlled substance — by someone other than the owner but at the owner's direction." The term "delivery" in the Public Health Code clearly equates with the term "transfer." Under this definition, a defendant constructively delivers a controlled substance when the defendant directs another person to convey the controlled substance under the defendant's direct or indirect control to a third person or entity. See, e.g., *Commonwealth v Murphy,* 577 Pa 275, 286; 844 A2d 1228 (2004) ("[A] defendant constructively transfers drugs when he directs another person to convey drugs under his control to a third person or entity."); *Dawson v State,* 812 SW2d 635, 637

(Tex App, 1991) (constructive delivery defined as "the transfer of a controlled substance either belonging to an individual or under his direct or indirect control by some other person at the instance or direction of the individual accused of such constructive transfer").

Here, the heroin purchased by Corson was not under defendant's control, nor did defendant direct the drug dealer to transfer the drugs to Corson. No evidence was presented that defendant had any discussions with the drug dealer regarding the delivery of the heroin to Corson on June 15, 2006. Corson's testimony established that defendant never had any control over the actual transfer between the drug dealer and Corson, nor did he ever have any control over the heroin that was sold to Corson for her use. Even assuming that the delivery from the drug dealer to Corson might not have occurred had defendant not transported Corson to Detroit and provided her with money, there was no evidence the defendant had any control over the heroin or that the drug dealer acted under defendant's direction. The evidence does not support a finding that defendant constructively delivered the heroin from the drug dealer to Corson.

### B. AIDING AND ABETTING

The prosecution argues in the alternative that defendant could be convicted of delivering the heroin from the drug dealer to Corson under an aiding and abetting theory. The prosecution contends that defendant aided and abetted the delivery of the heroin from the drug dealer to Corson by providing Corson with transportation and the money used to purchase the heroin.

A defendant "who aids or abets the commission of a crime may be convicted and punished as if he directly committed the offense." *People v Izarraras-Placante*, 246 Mich App 490, 495; 633 NW2d 18 (2001); MCL

767.39. "[T]he phrase 'aids and abets' is used to describe any type of assistance given to the perpetrator of the crime by words or deeds that are intended to encourage, support, or incite the commission of that crime." *People v Moore,* 470 Mich 56, 63; 679 NW2d 41 (2004); see also *People v Wright,* 99 Mich App 801, 820; 298 NW2d 857 (1980).

Both MCL 750.317a and MCL 333.7401(2)(a)(*iv*) criminalize the actions of a person who "delivers" a controlled substance, not a person who "receives" a controlled substance. In this case, no evidence was presented to support a finding that defendant aided and abetted the drug dealer in delivering the drugs to Corson. Cf. *Izarraras-Placante, supra* (the defendant aided and abetted the delivery of the cocaine to an undercover police officer when he discussed the price of the cocaine with the drug dealer and drove the drug dealer to the site of the sale); *People v Lyons,* 70 Mich App 615, 618; 247 NW2d 314 (1976) (the defendant who "actively assisted" the drug dealer "by acting as a doorman or a 'lookout' " was guilty of aiding and abetting the delivery of the heroin); *People v Berry,* 101 Mich App 399, 402-403; 300 NW2d 575 (1981) (the defendant was properly bound over on "the theory of aiding and abetting the delivery of a controlled substance" where the evidence established that the "defendant arranged, assisted, and facilitated the delivery of cocaine"). While the evidence in this case could support a finding that defendant aided and abetted Corson in *receiving* the heroin, the evidence did not support a finding that defendant aided and abetted the drug dealer in *delivering* the heroin to Corson.

### III. CONCLUSION

The evidence presented failed to establish a prima facie case for the element of delivery of heroin. There-

fore, the district court improperly bound defendant over for trial in the circuit court on the charges of delivery of a controlled substance causing death and delivery of less than 50 grams of heroin. Defendant did not constructively deliver the heroin to Corson because he did not have control of the heroin that was delivered to Corson, nor did he control the transfer of the heroin to Corson. Further, defendant did not aid and abet the delivery of heroin from the drug dealer to Corson. The circuit court properly quashed the district court's bindover on the charges of delivery of heroin causing death and delivery of less than 50 grams of heroin.

Affirmed.

BANDSTRA, J., concurred.

SCHUETTE, J. (*dissenting*). I respectfully dissent from the opinion of my distinguished colleagues in the majority, Judges FITZGERALD and BANDSTRA. I believe that there was sufficient evidence to support a conclusion that defendant aided and abetted the delivery of the heroin to Corson. Therefore, I would reverse and remand for further proceedings.

As noted by the majority, a defendant "who aids and abets the commission of a crime may be convicted and punished as if he directly committed the offense." *People v Izarraras-Placante*, 246 Mich App 490, 495; 633 NW2d 18 (2001).

To support a finding that a defendant aided and abetted a crime, the prosecutor must show that

" '(1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its

commission at the time that [the defendant] gave aid and
encouragement.' " [*People v Robinson*, 475 Mich 1, 6; 715
NW2d 44 (2006) (citations omitted).]

" 'An aider and abettor's state of mind may be inferred
from all the facts and circumstances.' " *People v Carines*,
460 Mich 750, 757; 597 NW2d 130 (1999), quoting *People
v Turner*, 213 Mich App 558, 568; 540 NW2d 728 (1995).
Here, there was evidence that Harold Spencer delivered
the heroin to Tracy Corson, i.e., that the crime was
committed by "some other person." Defendant drove
Corson to buy the heroin and gave her the money to do so.
Thus, there is evidence that defendant "performed acts
... that assisted the commission of the crime," i.e., he
provided the buyer and the money. That same evidence
shows that defendant intended the commission of the
crime or knew that Spencer intended the crime at the
time defendant gave aid. Thus, I believe that the trial
court was incorrect in concluding that the bindover on the
counts involving delivery of heroin was not proper under
an aiding and abetting theory.