William Eugene BEDFORD,
Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 01–82–0863–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Jan. 19, 1984.
Rehearing Denied Feb. 9, 1984.

David Berg, Houston, for appellant.

Ray Elvin Speece, Houston, for appellee.

Before JACK SMITH, BULLOCK and COHEN, JJ.

## OPINION

JACK SMITH, Justice.

The appellant was convicted of possession with intent to deliver a controlled substance, cocaine. A jury assessed his punishment at twenty-five years confinement in the Texas Department of Corrections. He alleges three grounds of error on appeal.

The appellant does not challenge the sufficiency of the evidence; therefore, the facts necessary for this opinion will be discussed in the respective grounds error.

In his first ground of error, the appellant asserts that the trial judge neglected to define the term "deliver" in the

jury charge in accordance with Article 4476–15, Sec. 1.02(8), Tex.Rev.Civ.Stat., which states as follows:

"Deliver" or "delivery" means the actual or constructive transfer from one person to another of a controlled substance or drug paraphernalia, whether or not there is an agency relationship. For purposes of this Act, it also includes an offer to sell a controlled substance or drug paraphernalia. Proof of an offer to sell must be corroborated by a person other than the offeree or by evidence other than a statement of the offeree.

The court's charge stated as follows: The defendant, William Eugene Bedford, Jr. stands charged by indictment with the offense of intentionally and knowingly possessing with intent to deliver a controlled substance, namely cocaine, alleged to have been committed in Harris County, Texas, on or about the 16th day of June, 1980. To this charge the defendant has pleaded not guilty. You are instructed that the law applicable to this case is as follows ... A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist ... A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result. "Deliver" or "delivery" means the actual or constructive transfer from one person to another of a controlled substance, whether or not there is an agency relationship.

The application paragraph stated as follows:

Now if you believe from the evidence beyond a reasonable doubt that the defendant, William Eugene Bedford, Jr., acting alone or together with Gary Zeller, as a party to the offense, as that term has been defined for you, if any, did intentionally or knowingly in Harris County, Texas on or about the 16th day of June, 1980, possess with intent to deliver a controlled substance, namely, cocaine, introduced as State's Exhibit Number 2, then you will find the defendant guilty as charged in the indictment.

Unless you so find from the evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the defendant.

The appellant asserts that the charge was fundamentally defective in that the word "deliver" was defined only in the abstract definition portion of the charge and not defined in the application paragraph.

He argues that the problem with this instruction is that it does not define for the jurors those facts that they must find in order to decide whether or not the appellant possessed cocaine with the intent to transfer it, either actually or constructively, from one person to another.

He also argues that the trial court failed to define "intent" in the application paragraph of the charge. He cites *Doyle v. State*, 631 S.W.2d 732 (Tex.Cr.App.1982) for the proposition that the failure to include an essential element of the offense of the charge applying the law to the facts is fundamental error.

In *Doyle*, on Motion for Rehearing, the Court of Criminal Appeals addressed two premises: (1) its authority to exercise its plenary powers to reverse a case, *sua sponte*, where error was not alleged in the trial court nor on appeal; and (2) the required elements of an offense necessary to be included in the application paragraph in a charge to the jury. The appellant's complaint in the present case is not the same as the two premises discussed in *Doyle*. He is not complaining that all required elements of the offense are not contained in the application paragraph; he is asserting that the definition of the terms "deliver" and "intent" should have been contained within the application paragraph.

The appellant states that in *Doyle* the court stated as follows:

Abstract definitions of legal terms, words, and phrases in a jury charge are of extreme importance to a jury's understanding of the law of the case. However, standing alone, abstract definitions are like words found in a dictionary. They are useless until correctly used in a sentence.

The appellant urges that *Doyle* mandates that the terms "deliver" and "intent" should have been contained within the application paragraph. We do not construe the holding in *Doyle* to contain such a mandate. We first note that the paragraph which appellant alludes to from *Doyle* is dicta and unnecessary to that decision. We next note that article 36.14, V.A.C.C.P., requires only that the trial judge prepare for a jury a proper and correct charge on the law, and the law as may be applied to the facts adduced.

In the abstract portion of the charge in the instant case, the definitions given were proper. In the application paragraph, all the elements of the offense were contained. The purpose of the application paragraph is to properly apply the law to the facts of a case. If the application paragraph is properly constructed, the issues will be clear to the jury. To require that all abstract definitions be contained within the application paragraph would tend to confuse the jury and obscure the issues, although the better procedure would be to include a phrase such as "as defined herein", as suggested by the Texas Court of Criminal Appeals in *Rider v. State*, 567 S.W.2d 192 (Tex.App. 1978).

We hold that the trial court charge properly applied the law to the facts and overrule the appellant's ground of error number one.

In his second and third grounds of error, the appellant asserts that the trial judge abused his discretion and fundamentally erred by terminating the voir dire of his counsel. He alleges that because of this termination, he failed to get a fair and impartial jury and effective assistance of counsel. He declares that because of this abuse of discretion he has been denied due process of law.

The appellant's complaint is clearly set forth in his counsel's initial remarks set forth in his bill of exceptions:

MR. BERG: I would ask, Your Honor, to interrupt me if I actually misstate something for the record.

Yesterday, during the voir dire examination, I was informed by the Court that I would have ten minutes remaining to conduct the voir dire examination, that is, the remainder of the voir dire examination. There were at that time a potential—strike the word potential. There were at that time eight remaining veniremen to whom I had not spoken or asked any individual questions.

Because of prior conversations with the court, I had no notice that there would be any need to budget my time any differently than I had. The Court had indicated he had not previously established any time limits for voir dire in a conversation with me approximately a week before the trial. I complimented him at that time on his segasiveness [sic] because I had just taught that subject, the subject of limiting voir dire examination and it was left at that. I think that is a fair statement, is it not, Your Honor?

THE COURT: That is correct.

MR. BERG: Yesterday I was, however, without warning, cut off. I was unable to ask certain questions, and I wanted to be fair to the Court here. The Court did ask me prior to the time we started voir dire examination whether or not I could finish by 5:15 or so, 5:00 or 5:15, I think the Court said because one of the Court personnel had some pressing personal business. I said I thought I could, but I did not take that as a limitation on my time. I didn't anticipate that I would be cut off in my voir dire.

THE COURT: Please state for the record how much time you did use during voir dire.

MR. BERG: I think I started at 3:05, Mr. Rosenthal?

THE COURT: It was between 3:00 o'clock and 3:05.

MR. BERG: I finished at—

THE COURT: 5:15

MR. BERG: 5:15. Your Honor, is that correct?

THE COURT: That is correct.

MR. BERG: It was at approximately 5:05 that I was informed for the first time that I would be cut off with 10 minutes to go. I am not certain, but I think the record will reflect that I requested additional time at the end of the time, to which His Honor replied no.

THE COURT: You did.

MR. BERG: And I was not able to ask certain questions. Prior to, I might also say for the record, although it is reflected in the record prior to the time that we were required to strike the panel or to utilize or strike to arrive at the final panel, I requested additional peremptory challenges, which was denied by the Court.

Now, with respect to the fact that I had to question eight or nine veniremen with 10 minutes to go, I would say that the time limitations caused me to tell the potential jurors that I had already questioned them enough or that they had been questioned by Mr. Rosenthal, or something to that effect, to cover up for the fact I was rushing terribly.

I was not at all satisfied, because I couldn't ask them any questions of any depth at all to determine whether or not I should strike them. Therefore, I was denied under the Sixth Amendment, the First Amendment to the Texas Constitution and the Sixth Amendment to the Constitution of the United States, and the defendant was denied the ability to intelligently strike jurors by the use of peremptory strikes.

Now, I have several questions that I wanted to ask the entire panel, and especially needed to ask them individually...

Continuing his bill of exceptions, appellant's counsel informed the court that the State had given the wrong range of punishment in its voir dire and that if given additional time he had intended to give the proper range of punishment, which he felt would have given him a tactical advantage. He stated that he intended to ask the veniremen how they felt about a prior conviction and whether or not they could consider the maximum and minimum range of punishment, especially whether they could give the minimum punishment where a defendant had a prior conviction. He informed the court that he could have made a more intelligent decision in the selection of jurors if he had been able to determine their feelings about prior convictions. He stated that he needed additional peremptory strikes because he had to put three women on this jury that he otherwise would not have allowed to get on the jury. He pointed out (giving specific names) that the three female jurors were over fifty years of age, would ordinarily have very "straight" backgrounds, and probably had not been exposed to cocaine and guns, which evidence would be forthcoming in this case.

The appellant cites *Mathis v. State*, 576 S.W.2d 835 (Tex.Cr.App.1979) and *Abron v. State*, 523 S.W.2d 405 (Tex.Cr.App.1975) as being supportive of his position that he was denied the right to ask proper questions during his voir dire examination and was therefore restricted to the extent that he could not intelligently exercise his right to make peremptory challenges. We construe *Mathis* and *Abron* to stand for the proposition that a court may not unreasonably restrict voir dire examination of a jury panel in proper areas of inquiry. In each of those cases the trial courts sustained objections to specific questions which were proper inquiries. Thus, the right of counsel to question the members of the jury panel in order to intelligently exercise challenges for cause and peremptory challenges was effectively denied. Such are not the facts in the instant case. In the instant case,

none of the questions which defense counsel dictated into his bill of exceptions were propounded to the jury panel.

Apparently the misunderstanding between defense counsel and the court came about as a result of a pre-trial conversation wherein the judge informed the defense counsel that he ordinarily did not put time limitations on voir dire examination. However, we cannot agree that defense counsel, in effect, was caught by surprise when the trial court terminated his voir dire examination. Defense counsel's voir dire commenced at approximately 3:00 p.m., and at that time he was asked by the trial court whether or not he could finish his voir dire by 5:00 or 5:15. This fact alone should have alerted defense counsel that his voir dire examination should be terminated by 5:00 or 5:15 p.m. During the next two hours of his voir dire, defense counsel did not inquire of any of the veniremen about prior convictions or consideration of the minimum and maximum range of punishment. At approximately 5:05 p.m., when defense counsel was notified that he had ten minutes left for voir dire, he still did not inquire into these areas, nor did he do so when given a two minute warning.

The Texas Court of Criminal Appeals has consistently held that the trial court has wide discretion over the course of voir dire of the jury panel. *Abron, supra.* Yet this discretion is not without limitation. See, *Mathis, supra; Abron, supra; Smith v. State,* 513 S.W.2d 823 (Tex.Cr.App.1974). The determination of abuse of discretion by a trial court, of necessity, must be made on a case by case basis to ascertain whether the defendant has been harmed by the termination of his voir dire.

In the instant case the appellant's defense counsel conducted a thorough and professional voir dire. All of the veniremen who eventually became members of the jury were thoroughly examined, including the three jurors whom the appellant alleges he would have struck had he been given additional peremptory strikes. The appellant's attorney in no way indicated during the two hour and fifteen minute

voir dire that he was going to ask questions concerning the minimum range of punishment or prior convictions. Further, although the court initially indicated the time voir dire would terminate and counsel was given warnings on two occasions by the trial court that his time was running out, no inquiries were made concerning either of these areas. Under these circumstances, we hold that the trial judge did not abuse his discretion by terminating the voir dire of the appellant, nor did it cause the appellant to receive ineffective assistance of counsel. The appellant's second and third grounds of error are overruled.

The judgment of the trial court is affirmed.