Arturo M. MONCIVALLES, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–86–00437–CR.

Court of Appeals of Texas,
San Antonio.

May 29, 1987.

Mark Stevens, San Antonio, for appellant.

Fred G. Rodriguez, Al Hernandez, Tina Tussay, Ilse D. Bailey-Graham, Criminal Dist. Attys., San Antonio, for appellee.

Before ESQUIVEL, BUTTS and CHAPA, JJ.

## OPINION

BUTTS, Justice.

Appeal is from conviction for constructive delivery of heroin. Punishment, which was enhanced, was assessed at 50 years' imprisonment.

Appellant first assails the sufficiency of the evidence to prove delivery by constructive transfer. The indictment contains two paragraphs, the first charging appellant with actual delivery, and the second with constructive delivery. The State elected to proceed to trial on the constructive delivery allegation, which was, in pertinent part, that appellant did on February 13, 1985:

> then and there knowingly and intentionally deliver to MARIO RAMIREZ by constructive transfer, a controlled substance, to-wit: HEROIN ...

The Controlled Substances Act, TEX. REV.CIV.STAT.ANN. art. 4476-15, § 1.02(6) (Vernon Supp.1987) provides, in pertinent part:

> "Deliver" or "delivery" means the actual or constructive transfer from one person to another of a controlled substance ...

The Court of Criminal Appeals in *Rasmussen v. State*, 608 S.W.2d 205 (Tex. Crim.App.1980) interpreted a constructive transfer to be "the transfer of a controlled substance either belonging to the defendant or under his direct or indirect control, by some other person or manner at the instance or direction of the defendant." (Citations omitted). *Davila v. State*, 664 S.W.2d 722, 724 (Tex.Crim.App.1984) (On State's Petition for Discretionary Review).

In determining the sufficiency of the evidence, this Court will review the evidence to ascertain whether a rational trier of facts could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. State*, 672 S.W.2d 801 (Tex.Crim.App.1984); *Carlsen v. State*, 654 S.W.2d 444 (Tex.Crim.App.1983).

The evidence shows that San Antonio Police Department undercover officer Mario Ramirez went to a certain street intersection and was approached by Gilbert Gonzales, who inquired whether he was "looking to connect." According to Ramirez, Gonzales offered to introduce him to his own heroin supplier. They went to a house on the corner of West Commerce and Northwest 34th Street. Immediately behind that house was another one, located at 101 Northwest 34th Street; there was an opening in the chainlink fence between the houses.

Gonzales called out for "Tootie." Appellant appeared from the house on West Commerce. Although Ramirez, who said he did not know appellant, testified that "Tootie" was appellant's nickname, Gonzales denied that appellant was "Tootie." He referred to appellant as Arturo. They were at the back of appellant's house (outside). Appellant asked Gonzales what he wanted and who Ramirez was; Gonzales identified Ramirez as his cousin. Ramirez told appellant he wanted to score "80" ($80.00 worth of heroin). Appellant asked if he had the money. The evidence differs here. Gonzales testified that another person who was with them (Freddy Rodriguez) handed him the money, and he then gave it to appellant. But Ramirez said he had the money, and Gonzales took it from him and handed it to appellant. Appellant took the money and went through the chainlink fence and into the second house on 34th Street. That is the last time appellant was seen or heard. A different and unknown hispanic male emerged from that house and handed a balloon to Ramirez. Proof later showed it contained heroin. Ramirez subsequently identified appellant from a photo-

graphic display. The third party who gave Ramirez the ballon was not identified. The indictment was returned in December, 1985.

Gonzales testified the house on West Commerce was Arturo's house and that the house into which he disappeared was not his. The evidence does not show otherwise. The indictment affirms the West Commerce address as appellant's. It is unclear from Gonzales' testimony where other persons on the scene that he saw at that time were located. The officer testified that the house on West Commerce was appellant's; he had checked the records.

Appellant was not charged with being a party to the actual transfer of the heroin which occurred when the unknown person delivered it to Ramirez. *See,* TEX.PENAL CODE ANN. §§ 7.01, 7.02 (Vernon 1974). Because the indictment alleged "constructive transfer," the State was required to prove that. *Davila v. State, supra,* at 724.

█ The evidence fails to establish that the controlled substance (heroin) in question belonged to appellant, or that prior to its delivery by the unknown person, it was under his direct or indirect control. The evidence equally fails to establish that the unknown person was acting as appellant's agent or under his direction. The only facts linking appellant to the offense charged are that appellant came out of his house, was therefore on the scene, and spoke to the officer and Gonzales. He was not shown to have spoken to the unknown person after he went into the other house; he was not shown to have spoken to anyone after he left the officer and Gonzales. There was testimony there were other persons nearby in a doorway.

Contrary to the argument by the State that appellant "negotiated" the price, there was no negotiation. The officer asked for "80;" appellant asked if he had the money, and appellant was given the money. These facts do not satisfactorily evidence either appellant's ownership or control of the contraband, particularly since any control of the premises on 34th Street was negated. While the facts are suspicious, they do no more than raise a suspicion that appellant was an agent of someone in the second house (from which the unknown person emerged with the contraband) or that the unknown person was either appellant's agent or acting under his direction or that someone in control of the premises was appellant's agent.

At most the evidence shows that appellant took the money into the house on 34th Street. It does not show that he was the one who relayed the offer to buy, although that, too, may be a strong suspicion. The fact that appellant understood what "80" meant and carried the money into the second house does not constitute proof that the contraband was under his direct or indirect control prior to its delivery to Ramirez. Furthermore, appellant's act in taking the money from the buyer to someone inside the second house, even assuming he did relay the offer to buy, and a third unknown person actually delivered the contraband, would not be sufficient to prove that the seller acted at the "instance or direction" of appellant. There is no proof that appellant had any control over that person's actions. The critical factor that "prior to the delivery the substance was directly or indirectly under the defendant's control," *Queen v. State,* 662 S.W.2d 338, 340–41 (Tex.Crim.App.1983), has not been proved.

We sustain the first point of error that the evidence is insufficient to prove that appellant constructively delivered the contraband in this case.

█ Because of our disposition of the first point, we do not address the second argument that the trial court erred by not granting appellant's motion to quash the indictment. The Supreme Court edict of *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978) and *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978) requires that in reversing for insufficiency of the evidence, we also direct the trial court to enter a judgment of acquittal.