Ronald J. DAWSON, Appellant,

v.

The STATE of Texas, Appellee.

No. B14–90–455–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

June 27, 1991.

Rehearing Denied Aug. 8, 1991.

Randy McDonald, Cynthia Russell Henley, Houston, for appellant.

Roger A. Haseman, Houston, for appellee.

Before PAUL PRESSLER, JUNELL and ELLIS, JJ.

## OPINION

PAUL PRESSLER, Justice.

Appellant was charged with the felony offense of delivery of cocaine by actual transfer, constructive transfer, and by offering to sell. The trial court granted appellant's motion for an instructed verdict as to delivery by actual transfer and by offering to sell. The jury found appellant guilty of delivery of a controlled substance, cocaine, by constructive transfer. The offense was enhanced with a prior felony conviction. The jury assessed punishment at confinement for fifty years in the Texas Department of Criminal Justice—Institutional Division. We reverse and render for acquittal.

In appellant's sole point of error, he claims that the evidence was insufficient to support the jury's finding that he delivered cocaine to an undercover police officer by constructively transferring the substance as a principal or as a party. The standard for reviewing the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Butler v. State,* 769 S.W.2d 234, 239 (Tex.Crim.App.1989). The State proceeded to trial under all three theories of delivery: actual transfer, constructive transfer and offer to sell. After the State rested, appellant moved for an instructed verdict of not guilty, which the trial court granted as to actual transfer and the offer to sell. The only charge which remained was delivery by constructive transfer. The issue is whether there is sufficient evidence to support a guilty verdict on this theory.

The officer and his partner approached appellant on the street and asked where they could get a $20 "rock" of cocaine. Appellant led the officers to two places. While they were walking, appellant asked the officers to give him a piece of the cocaine after it was purchased. The officer refused but told appellant he would give him $2.00.

Appellant first took the officers to a location where there was no cocaine available. The second place appellant took the officers was to a tin shack where appellant spoke to an unknown man through a closed door. The man asked appellant whether the undercover officer was "cool," and the appellant responded that the officer was a "cool guy." Once inside the shack, while sitting next to appellant, the officer told a man named Jenkins that he wanted to buy $20 worth of crack cocaine. Jenkins, who was directly across from the officer, offered him a "rock" that was sitting on a table. The officer told Jenkins that he wanted something bigger. Jenkins then produced a "skoal" can from his pocket which contained several pebble-like substances and told the officer to pick whichever one he wanted. The pebbles were in small plastic packages and appeared to be crack cocaine. The undercover officer purchased one by placing a $20 bill on the table. Although appellant sat beside the officer during the conversation, he did not participate in any of the negotiations.

Someone then said that the law was outside. Appellant punched the undercover officer in the side stating that he wanted his $2.00. Jenkins told everyone in the shack to be quiet, grabbed all the drugs and dropped them in a small safe in the back of the shack. Someone opened the door and the officers entered and arrested everyone inside. The police retrieved the "skoal" can and its contents. The pebble-like substances inside the can were 85.5% pure cocaine and weighed approximately 53.5 milligrams.

During the guilt-innocence phase of the trial, the court charged the jury on constructive transfer as follows:

'Delivery' means the constructive transfer from one person to another of a controlled substance, whether or not there is an agency relationship. Constructive transfer is the transfer of a controlled substance either belonging to an individual or under his direct or indirect control by some other person at the instance or direction of the individual accused of such constructive transfer.

This is essentially the same definition approved in *Rasmussen v. State*, 608 S.W.2d 205 (Tex.Crim.App.1980). The Court of Criminal Appeals later held that the essential elements of a "constructive transfer" are that the transferor have either direct or indirect control of the substance transferred, and that the transferor know there is a transferee or recipient of the drugs. *Daniels v. State*, 754 S.W.2d 214, 221-22 (Tex.Crim.App.1988).

Appellant complains that the evidence is insufficient to show that the drugs either belonged to him or that he controlled them through Jenkins, the one who delivered them. It is uncontroverted that appellant knew there was a recipient of the drugs, who was the undercover narcotics officer. The issue presented is whether appellant exercised either direct or indirect control over the cocaine. The State concedes that the evidence indicates that the deliveror, not appellant, was the probable "owner" of the cocaine. Therefore, for appellant to have constructively transferred the cocaine, Jenkins must have acted as appellant's agent or under his direction or control. Since the term "control" is not defined in the statute, it must be given its ordinary or plain meaning. *Daniels v. State*, 754 S.W.2d at 219, citing *Campos v. State*, 623 S.W.2d 657, 658 (Tex.Crim.App. 1981). The plain meaning of "control" is "to exercise restraining or directing influence over," or exercising "authority over what is not in one's physical possession." BLACK'S LAW DICTIONARY 174-75 (5th ed. 1983).

There is no evidence that appellant exercised any control over the drugs, that the drugs belonged to appellant or that he controlled them through Jenkins. There is no evidence that Jenkins was acting under appellant's direction. Jenkins controlled the transaction and the premises. No one asked the appellant's permission to sell or display the drugs and no one acted in a manner indicating that the drugs belonged to appellant or under his control. The only facts linking appellant to the cocaine are that he led the officer to the shack and spoke to an unknown man to gain entry. That is not sufficient to prove that the seller acted at the direction of the appellant. *See Davila v. State*, 664 S.W.2d 722, 725 (Tex.Crim.App.1984). Viewing the evidence in the light most favorable to the verdict, it is clear that a rational trier of fact could not have found beyond a reasonable doubt that appellant had any control over the delivery of this cocaine or that it was sold at his direction. Appellant's sole point of error is sustained.

Appellant's conviction is reversed and the court below is directed to enter a judgment of acquittal.