COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-266-CR
 
 
LEON 
WILBURN, JR.                                                              APPELLANT
 
V.
 
THE 
STATE OF TEXAS                                                                  STATE
 
 
------------
 
FROM 
CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY
 
------------
 
OPINION
 
------------
 
I. Introduction
 
        Appellant 
Leon Wilburn, Jr. appeals his conviction for delivery of a controlled substance 
in an amount of one gram or more but less than four grams.  A jury found 
Wilburn guilty and assessed his punishment at forty-five years’ 
confinement.  In three points, Wilburn complains that the evidence is 
legally and factually insufficient to establish that he delivered a controlled 
substance by constructive transfer and that the application portion of the jury 
charge is erroneous.  We will affirm.
II. Factual and 
Procedural Background
        The 
Fort Worth Police Department received numerous complaints concerning narcotics 
activity on Loving Avenue.  In response, a narcotics unit set up a hidden 
surveillance camera and arranged for undercover police officers to purchase 
drugs, in an effort to videotape the drug transactions.  One such 
transaction occurred on December 11, 2001.
        On 
December 11, 2001, Officer Dennis Alise videotaped Officer J.R. McCauley as he 
drove up to 3004 Loving Avenue.  Wilburn, who had been sitting on the front 
porch of the residence, met Officer McCauley in the residence’s front yard and 
asked him what he needed.  Officer McCauley responded that he wanted 
“three quarters,” the street term for three, twenty-five dollar pieces of 
crack cocaine. Officer McCauley said that Wilburn appeared to understand Officer 
McCauley’s request and instructed Officer McCauley to follow him into the 
residence, but to remain standing just inside the front door.
        Following 
Wilburn’s directions, Officer McCauley stood just inside the residence’s 
front door.  From there he observed Wilburn go to the kitchen and speak 
with a man later identified as Kenneth Hogg, although Officer McCauley was 
unable to hear the conversation.  Hogg then walked out of the kitchen, 
approached Officer McCauley, and handed Officer McCauley three twenty-five 
dollar rocks of crack cocaine.  Officer McCauley handed Hogg seventy-five 
dollars, exited the residence, got in his car, and drove away.
        Wilburn 
pleaded not guilty to the charges of delivery of a controlled substance of one 
gram or more, but less than four grams, by constructive transfer and delivery of 
a controlled substance of one gram or more, but less than four grams, by actual 
transfer.  The trial court granted Wilburn’s motion for an instructed 
verdict as to paragraph two of the indictment, which charged Wilburn with 
delivery of the controlled substance by actual transfer.  A jury 
subsequently convicted Wilburn of constructively transferring the controlled 
substance.  This appeal followed.
III. 
Constructive Transfer
        In 
his first and second points, Wilburn argues that the evidence is both legally 
and factually insufficient to support the jury’s finding that he delivered a 
controlled substance by constructive transfer.
        A. Sufficiency Standards of Review
        In 
reviewing the legal sufficiency of the evidence to support a conviction, we view 
all the evidence in the light most favorable to the verdict in order to 
determine whether any rational trier of fact could have found the essential 
elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Ross v. State, 133 S.W.3d 
618, 620 (Tex. Crim. App. 2004).
        This 
standard gives full play to the responsibility of the trier of fact to resolve 
conflicts in the testimony, to weigh the evidence, and to draw reasonable 
inferences from basic facts to ultimate facts.  Jackson, 443 U.S. at 
319, 99 S. Ct. at 2789.  The trier of fact is the sole judge of the weight 
and credibility of the evidence. See Tex. Code Crim. Proc. Ann. art. 38.04 
(Vernon 1979); Margraves v. State, 34 S.W.3d 912, 919 (Tex. Crim. App. 
2000).  Thus, when performing a legal sufficiency review, we may not 
re-evaluate the weight and credibility of the evidence and substitute our 
judgment for that of the fact finder.  Dewberry v. State, 4 S.W.3d 
735, 740 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131 
(2000).  We must resolve any inconsistencies in the evidence in favor of 
the verdict.  Curry v. State, 30 S.W.3d 394, 406 (Tex. Crim. App. 
2000).
        In 
contrast, in reviewing the factual sufficiency of the evidence to support a 
conviction, we are to view all the evidence in a neutral light, favoring neither 
party.  See Zuniga v. State, 144 S.W.3d 477, 481 (Tex. Crim. App. 
2004).  The only question to be answered in a factual sufficiency review is 
whether, considering the evidence in a neutral light, the fact finder was 
rationally justified in finding guilt beyond a reasonable doubt.  Id. 
at 484.  There are two ways evidence may be factually insufficient: (1) the 
evidence supporting the verdict or judgment, considered by itself, is too weak 
to support the finding of guilt beyond a reasonable doubt; or (2) when there is 
evidence both supporting and contradicting the verdict or judgment, weighing all 
of the evidence, the contrary evidence is so strong that guilt cannot be proven 
beyond a reasonable doubt.  Id. at 484-85.  “This standard 
acknowledges that evidence of guilt can ‘preponderate’ in favor of 
conviction but still be insufficient to prove the elements of the crime beyond a 
reasonable doubt.”  Id. at 485.  In other words, evidence 
supporting a guilty finding can outweigh the contrary proof but still be 
insufficient to prove the elements of an offense beyond a reasonable 
doubt.  Id.
        In 
performing a factual sufficiency review, we are to give deference to the fact 
finder’s determinations, including determinations involving the credibility 
and demeanor of witnesses.  Id. at 481; Cain v. State, 958 
S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment 
for that of the fact finder’s. Zuniga, 144 S.W.3d at 482.
        A 
proper factual sufficiency review requires an examination of all the 
evidence.  Id. at 484, 486-87.  An opinion addressing factual 
sufficiency must include a discussion of the most important and relevant 
evidence that supports the appellant’s complaint on appeal.  Sims v. 
State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).
        B. Wilburn Constructively Transferred Cocaine
        The 
offense of delivery of a controlled substance is defined as follows: “Except 
as authorized by this chapter, a person commits an offense if the person 
knowingly manufactures, delivers, or possesses with intent to deliver a 
controlled substance listed in Penalty Group 1.” Tex. Health & Safety Code Ann. § 
481.112(a) (Vernon 2003).  “‘Delivery’ means to transfer, actually or 
constructively, to another a controlled substance, counterfeit substance, or 
drug paraphernalia, regardless of whether there is an agency 
relationship.”  Id. § 481.002(8).  “Transfer” has been 
defined as “a voluntary relinquishment of possession in favor of 
another.”  See Thomas v. State, 832 S.W.2d 47, 51 (Tex. Crim. App. 
1992).  Finally, a constructive transfer is “the transfer of a controlled 
substance either belonging to an individual or under his control by some other 
person or agency at the instance or direction of the individual.”  Rassmussen 
v. State, 608 S.W.2d 205, 209 (Tex. Crim. App. [Panel Op.] 1980).  To 
effectuate a constructive transfer, the defendant must know of the existence of 
the ultimate transferee.  See Daniels v. State, 754 S.W.2d 214, 
221-22 (Tex. Crim. App. 1988); Gonzalez v. State, 588 S.W.2d 574, 577 
(Tex. Crim. App. [Panel Op.] 1979).
        The 
trial court’s charge to the jury used the definitions articulated above.  
Therefore, in order to convict Wilburn, the jury was required to find (1) that 
the cocaine was under Wilburn’s direct or indirect control; (2) that the 
cocaine was transferred at Wilburn’s instance or direction; and (3) that 
Wilburn knew of Officer McCauley’s existence.
        In 
considering the third element — whether Wilburn knew of Officer McCauley’s 
existence — Wilburn met Officer McCauley in the front of the residence on 
Loving Avenue and asked him what he needed.  When Officer McCauley 
responded that he needed three quarters, Wilburn led Officer McCauley into the 
residence and spoke with Hogg, and Hogg handed Officer McCauley three 
quarters.  Officer McCauley testified that Wilburn remained in the 
residence while Hogg gave him the cocaine.  Thus, legally and factually 
sufficient evidence exists to establish that Wilburn knew of Officer 
McCauley’s existence as the ultimate transferee.  See Daniels, 754 
S.W.2d at 221-22.
        Moving 
to the first and second elements of a constructive transfer, Wilburn argues that 
“[t]here is clearly no evidence that Mr. Wilburn had control over Hogg’s 
actions, and no evidence that Mr. Wilburn directly or indirectly controlled the 
cocaine prior to its delivery.”  However, the facts supporting the 
jury’s finding that Wilburn did exercise control over the cocaine and over 
Hogg’s actions are similar to the facts supporting like findings in Hubbard 
v. State and in Swinney v. State.  See Hubbard, 
896 S.W.2d 359, 360-61 (Tex. App.—Houston [1st Dist] 1995, no pet.); Swinney, 
828 S.W.2d 254, 256 (Tex. App.—Houston [1st Dist] 1992, no pet.).
        In 
Hubbard, a police officer was standing outside a convenience store when 
Hubbard approached him and asked what he was looking for.  896 S.W.2d at 
360-61.  The officer said that he wanted to buy twenty dollars worth of 
crack cocaine.  Id. at 361.  Hubbard whistled to an individual 
across the street, the individual approached, and Hubbard stated to him that the 
officer was interested in buying drugs.  Id.  A transaction 
occurred, and Hubbard and the actual transferor left together.  Id.  
The court held that the evidence was sufficient to support Hubbard’s 
conviction on the basis that he constructively transferred the cocaine to the 
officer.  Id. at 363.  Specifically, in addressing the issue of 
control, the court focused on the facts that Hubbard initiated contact with the 
officer and remained at the scene during the delivery.  Id. at 
362-63.
        In 
Swinney, an undercover police officer was driving in an automobile when 
Swinney and three other individuals, standing on the side of the road, made head 
and hand gestures towards him.  828 S.W.2d at 256.  Swinney approached 
the car and asked the officer what he needed.  Id.  The officer 
responded that he needed a twenty-dollar rock, and Swinney went back to the 
group of individuals he was standing with and spoke with them.  Id.  
Swinney accompanied one of the individuals to the officer’s car; that 
individual entered the officer’s car on the passenger side while Swinney 
remained standing in between the open door and the outside of the car.  Id.  
The individual asked the officer how many he needed, the officer said just one, 
and a drug transaction occurred.  Id.  The reviewing court held 
that the evidence was sufficient to support the jury’s finding that Swinney 
constructively transferred the cocaine.  Id. at 258.
        Here, 
Officer McCauley approached the residence and was met by Wilburn in the front 
yard area. Wilburn initiated the conversation and asked what Officer McCauley 
needed. Wilburn then directed Officer McCauley to follow him into the residence 
and to wait inside the front door while he went to speak with Hogg.  Hogg, 
the actual transferor, did not speak to Officer McCauley when he gave Officer 
McCauley the cocaine.  Instead, after speaking with Wilburn, Hogg 
approached Officer McCauley and handed him three quarters without saying a 
word.  Hogg did not ask Officer McCauley what he wanted.  Officer 
McCauley testified,
   
Q: [Prosecutor] Did you ever speak to Kenneth Hogg about what you wanted?
 
A: 
[Officer McCauley] No, sir.
Q: 
[Prosecutor] So you never told him you wanted three quarters?
 
        A: 
[Officer McCauley] No, sir.
        Q: 
[Prosecutor] He just came out with that?
        A: 
[Officer McCauley] Yes, sir.
        Q: 
[Prosecutor] And that was after Mr. Wilburn talked to him?
        A: 
[Officer McCauley] Yes, sir.
  
Moreover, 
Hogg transferred the three quarters to Officer McCauley before Officer McCauley 
turned over the seventy-five dollars to Hogg.  It is evident that Hogg knew 
exactly what Officer McCauley desired to purchase.  Additionally, Wilburn 
remained in the vicinity of the transaction; he remained in the kitchen and did 
not leave the residence or go to a different portion of the home while Hogg gave 
the cocaine to Officer McCauley.  Accordingly, it is reasonable to assume 
that if Officer McCauley from his vantage point inside the front door could see 
Wilburn speaking to Hogg in the kitchen then from the kitchen Wilburn could see 
Hogg giving the cocaine to Officer McCauley just inside the door.  Finally, 
Officer McCauley testified that he had no doubt from the manner in which the 
events transpired that Wilburn had directed Hogg to deliver the three 
rocks.  Officer McCauley testified on cross-examination as follows:
  
Q: [Defense Attorney] You are telling us today that there isn’t even a certain 
amount of supposition on your part in regards to whether Leon Wilburn directed 
Hogg to give you the drugs?
 
A: 
[Officer McCauley] That’s correct.
 
Q: 
[Defense Attorney] That is - - there is no doubt in your mind?
 
A: 
[Officer McCauley] That’s correct.
 
Q: 
[Defense Attorney] And that is entirely based upon the fact that you said 
something to Leon as you were walking in the house and that a transaction 
happened after that?
 
A: 
[Officer McCauley] That‘s correct.

                . 
. . .
  
Q: 
[Defense Attorney] The middle part is not supposition on your part?
  
A: 
[Officer McCauley] It’s common sense.  If I ask for three crack rocks and 
another guy comes and brings them to me, and I didn’t talk to that second 
person that he had to know it somehow without reading minds.
 
Thus, 
similar to the situations discussed above in Hubbard and Swinney, 
Wilburn remained near the transaction at the time it was made and exhibited his 
authority over the drugs and over the actual transferor, Hogg.
        Wilburn 
relies on Davila v. State, Dawson v. State, and Moncivalles v. 
State to support his contention that the evidence is legally and factually 
insufficient to establish that he constructively transferred the cocaine to 
Officer McCauley.  See Davila v. State, 664 S.W.2d 722 (Tex. Crim. 
App. 1984); Dawson v. State, 812 S.W.2d 635, 636 (Tex. App.—Houston 
[14th Dist.] 1991, pet ref’d); Moncivalles v. State, 733 S.W.2d 601, 
603 (Tex. App.—San Antonio 1987, pet. dism’d, improvidently granted).  
The facts in Davila, Dawson, and Moncivalles, differ, 
however, from the present facts.
        In 
Davila, an undercover officer-agent and an unidentified informant entered 
a residence and spoke with Davila. 664 S.W.2d at 723.  Davila asked what 
they wanted and then went outside to speak with Cosme, the actual 
transferor.  Id.  Davila returned to the inside of the 
residence and sat on the couch.  Id.  Shortly thereafter, Cosme 
entered the residence and asked, “How many do you want” or “What do you 
want,” the officer repeated his request, and Cosme handed over the drugs in 
exchange for money.  Id.  The Court of Criminal Appeals 
affirmed the Amarillo Court of Appeals’s decision holding the evidence 
insufficient to establish that Davila constructively transferred the narcotics. I 
d. at 725.  The Court of Criminal Appeals explained, “At most the 
evidence shows that appellant merely relayed Chism’s offer to buy to her 
husband Cosme.”  Id. at 724.
        Wilburn 
overlooks a number of factual distinctions between this case and Davila.  
In Davila, unlike here, the officer entered the residence without the 
constructive transferor’s assistance.  Davila, unlike Wilburn, did not 
speak with the undercover officer outside the house or direct the officer to the 
interior of the residence.  In Davila, unlike here, the actual 
transferor expressly asked the officer what he desired to purchase.  See 
664 S.W.2d at 723.  Here, as set forth above, Hogg already knew and 
understood what Officer McCauley wanted to purchase.  Hogg did not speak to 
Officer McCauley at all.  Significantly, these facts and those discussed 
above do not support the conclusion that Wilburn “merely relayed” Officer 
McCauley’s request to Hogg. See id. at 724.
        In 
Dawson v. State, officers approached Dawson and asked where they could 
get a twenty-dollar “rock” of cocaine. 812 S.W.2d at 636.  Dawson led 
them to a tin shack where an individual, Jenkins, sat inside.  Id.  
All of them entered, and the officers purchased cocaine from Jenkins.  Id.  
Soon thereafter, other officers arrived and arrested everyone inside.  Id.  
The appellate court held that there was no evidence that Dawson exercised any 
control over the drugs. Id. at 637.
        In 
Moncivalles, Gonzales led an undercover officer to a house and yelled out 
for “Tootie.”  733 S.W.2d at 603.  Moncivalles appeared and asked 
the officer what he wanted, and the officer said he wanted to score “80" 
(eighty dollars’ worth of heroin).  Id.  Moncivalles took the 
money back into the house, but a different individual came out and handed the 
drugs to the officer.  Id.  The appellate court held that the 
evidence failed to establish that the heroine was under Moncivalles’s control 
or that the person who delivered it to the officer was acting under 
Moncivalles’s direction.  Id.
        The 
facts in Moncivalles and Dawson are distinguishable from the 
present facts. Unlike in Dawson, where Dawson led the officers into the 
tin shack but the transaction occurred exclusively between Jenkins and the 
officers, here Wilburn spoke to Hogg and communicated Officer McCauley’s 
request to Hogg.  In contrast to Moncivalles, where it was not shown 
that Moncivalles ever spoke to the individual who returned from the house with 
the drugs, Officer McCauley observed Wilburn approach Hogg and speak to 
Hogg.  Hogg then approached Officer McCauley, and the drug transaction took 
place.
        The 
present facts are more like the facts in Hubbard and Swinney than 
like the facts in Davila, Dawson, and Moncivalles.  
For the reasons articulated above, viewing the evidence under the appropriate 
standards of review, it is legally and factually sufficient to establish the 
first and second elements of a constructive transfer by Wilburn to Officer 
McCauley:  that the cocaine was under Wilburn’s direct or indirect 
control and that the cocaine was transferred at Wilburn’s instance or 
direction.  See Daniels, 754 S.W.2d at 221-22; see also Jackson 
v. State, 84 S.W.3d 742, 743 (Tex. App.—Houston [1st Dist.] 2002, no 
pet.).
        Viewing 
the evidence in the light most favorable to the verdict, we hold that a rational 
trier of fact could have found the essential elements of the offense beyond a 
reasonable doubt. Jackson, 443 U.S. at 319, 99 S. Ct. at 2789.  
Furthermore, viewing all the evidence in a neutral light, favoring neither 
party, we also conclude that the evidence supporting the verdict, taken alone, 
is not too weak to support the finding of guilt beyond a reasonable doubt and 
that the contrary evidence is not so strong that guilt cannot be proven beyond a 
reasonable doubt.  Zuniga, 144 S.W.3d at 481.  Accordingly, we 
hold that the evidence is both legally and factually sufficient to support 
Wilburn’s conviction for delivery of a controlled substance of one gram or 
more, but less than four grams, by constructive transfer.  We overrule 
Wilburn’s first and second points.
IV. Jury Charge
        In 
his third point, Wilburn argues that the trial court erred in its charge to the 
jury.  Specifically, Wilburn complains that “[t]he trial court failed to 
completely instruct the jury in the application paragraph at guilt/innocence on 
the necessary elements to establish delivery by constructive transfer.”  
The State contends that Wilburn did not suffer egregious harm from the alleged 
charge error.
        When 
examining alleged jury charge error, we first look to see if the error actually 
occurred and if the error was preserved.  See Hutch v. State, 922 
S.W.2d 166, 170-71 (Tex. Crim. App. 1996). Preserved error warrants reversal if 
any harm is shown.  Id.  On the other hand, if the alleged 
error is raised for the first time on appeal, then the appellant must show that 
the harm resulting from the error was egregious, or so harmful that the 
appellant was denied a fair and impartial trial.  Id. at 171; Almanza 
v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh’g).
        The 
function of the jury charge is to instruct the jury on the law applicable to the 
case.  Dinkins v. State, 894 S.W.2d 330, 339 (Tex. Crim. App. 
1995).  When reviewing the charge for alleged error, we examine the charge 
as a whole, considering the relationship between the abstract and application 
portions of the charge.  See Caldwell v. State, 971 S.W.2d 663, 666 
(Tex. App.—Dallas 1998, pet ref’d).
        Wilburn 
argues that the “application paragraph did not include all the necessary 
elements of constructive delivery.”  The Court of Criminal Appeals has 
stated, “It is axiomatic that when required elements of an offense are omitted 
from a charging instrument, such omissions will render a conviction fatally 
defective.”  Doyle v. State, 631 S.W.2d 732, 735 (Tex. Crim. App. 
[Panel Op.] 1982) (op. on reh’g).  It continued, “We believe that it 
logically follows that when a trial court omits from the application paragraph 
of the charge required elements of an offense, this also will render a 
conviction fatally defective.”  Id.
        Here, 
the relevant part of the abstract portion of the jury charge stated, “‘Deliver[y]’ 
means to transfer, actually or constructively, to another a controlled 
substance, regardless of whether there is an agency relationship.” The charge 
continued,
  
A “constructive transfer” of a controlled substance, as used herein, means 
the transfer from one person to another of a controlled substance, either 
belonging to the person charged or under his direct or indirect control, by some 
other person or manner, at the instance or direction of the person 
charged.  In order to establish a constructive transfer by the person 
charged to some other person, it must be shown that, prior to the alleged 
delivery, the transferor must have either direct or indirect control of the 
substance transferred and that the transferor knew of the existence of the 
transferee.
 
The 
application portion of the jury charge stated,
  
Now, if you find from the evidence beyond a reasonable doubt that the Defendant, 
Leon Wilburn, Jr., in the County of Tarrant and State of Texas, on or about the 
11th day of December, 2001, did then and there intentionally or knowingly 
deliver to J.R. McCauley a controlled substance, namely: Cocaine, of one gram or 
more, but less than four grams, including any adulterants or dilutants, by 
constructively transferring said controlled substance to another person and the 
Defendant, Leon Wilburn, Jr., knew that J.R. McCauley was the transferee, or if 
you find that acting with intent to promote or assist the commission of the 
offense, the Defendant solicited, encouraged, directed, aided or attempted to 
aid another person to commit the offense, then you will find the Defendant 
guilty of the offense of Delivery of a Controlled Substance, namely: Cocaine, of 
one gram or more, but less than four grams, including any adulterants or 
dilutants, by constructively transferring said controlled substance, as charged 
in the Indictment.
  
Unless 
you so find from the evidence beyond a reasonable doubt, or if you have a 
reasonable doubt thereof, you will acquit the Defendant and say by your verdict 
“Not Guilty.”
 
        Wilburn 
was charged with delivery of a controlled substance of one gram or more, but 
less than four grams, by constructive transfer.  The crime alleged in the 
indictment was delivery of a controlled substance.[1]  
The method of delivery was by constructive transfer.  “Constructive 
transfer” is a term of art that falls within the statutory definition of 
“delivery” as it relates to controlled substances.  See Moore v. 
State, 82 S.W.3d 399, 408 (Tex. App.—Austin 2002, pet. ref’d).  As 
such, “constructive transfer” is not an independent crime that requires that 
all elements composing the definition to be alleged in the application portion 
of the jury charge.  See Doyle, 631 S.W.2d at 735.  Rather, it 
is an element itself, specifically, a form of delivery that is part of the crime 
alleged—delivery of a controlled substance.[2]
        Examining 
the application portion of the jury charge, we recognize that all the elements 
of the alleged crime are present.  Additionally, the trial court correctly 
defined “constructive transfer” in the abstract portion of the charge.  
It was not mandatory to include the definition, or “elements” as Wilburn 
argues, of constructive transfer in the application portion of the charge.  
See Bedford v. State, 666 S.W.2d 574, 575-76 (Tex. App.—Houston [1st 
Dist.] 1984, pet. ref’d).  As the court in Bedford stated,
   
The purpose of the application paragraph is to properly apply the law to the 
facts of a case. . . . To require that all abstract definitions be contained 
within the application paragraph would tend to confuse the jury and obscure the 
issues, although the better procedure would be to include a phrase such as “as 
defined herein”, as suggested by the Texas Court of Criminal Appeals in Rider 
v. State, 567 S.W.2d 192 (Tex. App. 1978).”
 
Id. 
at 576.[3]
        Wilburn 
argues that this case is similar to Daniels.  See Daniels, 
754 S.W.2d at 222.  There, the Court of Criminal Appeals affirmed the 
intermediate court of appeals’s decision holding that the jury charge caused 
appellant to suffer egregious harm because it permitted the jury to convict on a 
theory not alleged in the indictment.  Daniels is inapposite.  
Here, the charge tracked the language of the indictment, which alleged delivery 
by constructive transfer.  We hold that the trial court did not err by 
omitting the definition of “constructive transfer” from the application 
portion of the jury charge.  Accordingly, we overrule Wilburn’s third 
point.
V. Conclusion
        Having 
overruled all of Wilburn’s points, we affirm the trial court’s judgment.
 
  
                                                          SUE 
WALKER
                                                          JUSTICE
 
 
PANEL 
A:   CAYCE, C.J.; HOLMAN and WALKER, JJ.
 
DO 
NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: 
February 10, 2005


NOTES
1.  
The indictment alleges that Wilburn did “then and there intentionally or 
knowingly deliver to J.R. McCauley a controlled substance, namely cocaine of one 
gram or more but less than four grams, including any adulterants or dilutants, 
by constructively transferring said controlled substance.”
2.  
The State may prove delivery by an actual transfer, constructive 
transfer, or an offer of sale.  See Tex. Health & Safety Code Ann. § 
481.002(8).
3.  
See also Rollins v. State, No. 14-94-00144-CR, 1996 WL 42040 (Tex. 
App.—Houston [14th Dist.] 1996, no pet.) (not designated for publication) 
(holding that definition of “criminal negligence” need not be provided in 
application portion of jury charge when it immediately preceded the application 
paragraph).